Schwemer, Trustee in bankruptcy, Respondent, vs. Citizen's Loan & Investment Company, Appellant.

*March 9—May 25, 1937.*

For the appellant there were briefs by *Sullivan & Taugher,* attorneys, and *John J. Sullivan* of counsel, all of Milwaukee, and oral argument by *Mr. Sullivan.*

For the respondent there were briefs by *August C. Moeller,* attorney, and *Emmet Horan, Jr.,* of counsel, both of Milwaukee, and oral argument by *Mr. Horan.*

The following opinion was filed April 7, 1937:

FRITZ, J. It is undisputed that on January 16, 1933, the defendant caused a machine, which belonged to the Wisconsin Lannon Stone Company (hereinafter called the "Stone Company"), to be sold for $300, under a chattel mortgage given by the Stone Company to secure an indebtedness to the defendant. It had recovered possession of the machine under a judgment entered January 7, 1933, in an action of

replevin, which it brought against the Stone Company. On January 11, 1933, the defendant had given the Stone Company written notice that it would sell the machine at public auction on January 27, 1933, to satisfy the mortgage indebtedness. However, instead of waiting until that date, the defendant sold the machine at a private sale on January 16, 1933, for $300. Out of that sum it retained $144.12 in payment of the balance owing it on the mortgage indebtedness, and $7.90 for costs on replevin, and paid $6 as constable fees and $4.50 as costs incurred on the sale, and then paid the entire remaining surplus of $137.48 to James O'Rourke, as a commission on the sale. Upon those undisputed facts and other facts found by the court in relation to matters in dispute, it made conclusions of law upon which judgment was entered for the recovery of damages by the plaintiff on the ground that the sale was invalid.

On one of the matters in dispute, and as to which the defendant contends that the court erred, its findings are to the following effect: That by reason of defendant's written notice of January 11, 1933, that the sale would be made at public auction on January 27, 1933, the Stone Company relied upon that notice and believed that the machine would be sold on January 27, 1933; that it received no notice of the private sale which was made on January 16, 1933; and that having been misled by the written notice of January 11, 1933, it was deprived of an opportunity to be present at the sale to protect its interests, and was also deprived of its opportunity to redeem the machine within five days after the sale, under sec. 241.13, Stats. A review of the record discloses that although there is some conflict in the evidence, the court's findings on those matters are not contrary to the clear preponderance of the evidence and must therefore be sustained.

The defendant further contends that the court erred in finding that the value of the machine on January 16, 1933,

was $750, and that the price of $300 which was obtained on that sale was not fair, reasonable, or adequate, in view of the value of the machine. There is a decided conflict in the testimony of the witnesses on the subject of value. That testimony is very unsatisfactory and unconvincing. Owing to the depression, there was no demand or market for such a machine, and the Stone Company had been trying to sell it for two years without getting even an offer. There was no evidence as to any sale anywhere during that period of either such a machine or one reasonably comparable thereto. It was made of steel and mounted on a traveling carriage, which held a 48-inch diamond blade for sawing stone, and had a 30 H. P. electric motor. Its shipping weight was nine tons. The Stone Company had purchased it in 1928 for $3,700 in New York, and the freight charges to Milwaukee were $126. The witnesses' testimony was highly speculative and conjectural. Their estimates varied from its value as junk to its theoretical value by deducting merely the five per cent annual depreciation allowed by the federal government in income tax reports. However, it was proven that in the replevin action the justice of the peace found, on January 7, 1933, upon hearing testimony in relation to that machine, "that the value thereof is" $150, and on that finding it was then adjudged that in default of the delivery thereof "that the plaintiff do recover from the defendant the value of such goods and chattels, to wit, the sum of $150." That finding and adjudication as to the value was made in compliance with the requirement in sec. 305.12, Stats., that in replevin actions the justice of the peace shall make a finding as to the value of the property. *Darling v. Conklin,* 42 Wis. 478, 481, 482. Consequently, as it was a finding and adjudication in relation to a fact which was material in that action, in which the Stone Company had duly appeared and its counsel had twice participated in proceedings resulting in adjournments of the trial, the court's finding and adjudica-

tion that the value was then $150 was binding and conclusive upon the parties and their respective privies or successors in interest, in the absence of the reversal or modification thereof on an appeal or otherwise, in some direct proceeding. Under the circumstances, there is applicable the rule stated in Bigelow, Estoppel (5th ed.), ch. III, p. 99, § 2, "That a matter of fact, or generally speaking, of law, once adjudicated by a court of competent jurisdiction, concurrent or exclusive, however erroneous the adjudication, may be relied upon as an estoppel in any subsequent collateral suit in the same or any other court, at law, in chancery, in probate, or in admiralty, when either party, or the privies of either party, allege anything inconsistent with it; and this too whether the subsequent suit is upon the same or a different cause of action." In this state the rule was applied in *Allie v. Schmitz,* 17 Wis. *169; *Heath v. Frackleton,* 20 Wis. *320, *322; *Board of Supervisors v. Mineral Point Railroad Co.* 24 Wis. 93, 124; *Strong v. Hooe,* 41 Wis. 659, 671; *Wentworth v. Racine County,* 99 Wis. 26, 31, 74 N. W. 551; *Grunert v. Spalding,* 104 Wis. 193, 213, 80 N. W. 589; *Hart v. Moulton,* 104 Wis. 349, 353, 80 N. W. 599; *Rupiper v. Calloway,* 105 Wis. 4, 7, 80 N. W. 916; *Rowell v. Smith,* 123 Wis. 510, 516, 102 N. W. 1. In view of that rule, and in the absence of any proof as to a change in the value of the machine between the 7th and 16th days of January, 1933, the former finding and adjudication that the value thereof was $150 on January 7, 1933, must be accepted as conclusive; and therefore the plaintiff is estopped by that finding on that subject. Consequently, the court's findings that the value was $750 and that the sum of $300 realized on the sale was inadequate cannot be sustained.

The defendant further contends that the court erred in its findings to the following effect: That the defendant made no effort to advertise the sale, which it made on January 16,

1933, or to obtain a fair price; that, in conducting that sale, the defendant did not consider the Stone Company's interests; but disregarded them, and considered only its advantage by securing payment of its indebtedness; that no part of the surplus of $137.48 (remaining after deducting $144.12 owing to the defendant and $18.40 for expenses) was paid to the Stone Company, but was paid, without its consent, to James O'Rourke, who was not acting for it; that no affidavit reporting the sale and the amount realized thereon was filed within ten days as required by sec. 241.15, Stats., or until March 7, 1933; that the sale was not conducted by the defendant in a fair or just manner, and it did not exercise reasonable care or diligence in attempting to sell the property at the private sale; that the defendant, in conducting the private sale, was not actuated by a desire to realize an adequate surplus from the sale, so that the interests of the Stone Company might be protected thereby; that it, having been misled by the written notice of January 11, 1933, was deprived of an opportunity of being present at the sale to protect its interests, and was deprived of its opportunity to redeem the property within five days after the sale under sec. 241.13, Stats. Upon those findings and its finding that the value of the property was $750, the court concluded that the sale was contrary to law, and in violation of the Stone Company's rights in and to the property; that the ultimate surplus of $137.48 remaining out of the proceeds of the private sale was unlawfully paid to James O'Rourke, and that the Stone Company sustained damages in the sum of $605.88 (which is the difference between the value of $750, as found by the court, and the debt of $144.12, secured by the mortgage).

A review of the record discloses that those findings are not contrary to the clear preponderance of the evidence, and warranted the court's conclusions thereon, excepting in so far as they were based on the finding that the value was $750.

However, even though that finding as to value must be considered erroneous for the technical reason stated above, the court was warranted in finding and concluding, (1) that the sale was not made or conducted by the defendant in a fair and just manner, or with the exercise of reasonable care and diligence to realize an adequate surplus therefrom to protect the interests of the Stone Company; and (2) that, because it was misled by the notice as to the date of sale, and also because the defendant failed to file an affidavit reporting the sale within ten days thereafter, as required by sec. 241.15, Stats., the Stone Company was deprived of its rights and opportunties to protect its interest at the sale, and to redeem the property within five days thereafter; and (3) that therefore the sale was in violation of the Stone Company's rights and invalid.  As is stated in 11 C. J. p. 708, § 508, "The mortgagee must deal fairly and justly with the property in the exercise of his power of sale.  He must exercise reasonable care and diligence in disposing of the goods, and must sell them fairly and for an adequate price."  See also *Johnson Bros. v. Selden,* 140 Ala. 418, 37 So. 249; *Zadek v. Burnett,* 176 Ala. 80, 57 So. 447, 450; *Hawkins Furniture Co. v. Morris,* 143 Ky. 738, 137 S. W. 527; *Boyd v. Beaudin,* 54 Wis. 193, 199, 11 N. W. 521.  In applying that rule in *Kellogg v. Malick,* 125 Wis. 239, 252, 253, 103 N. W. 1116, 1120, involving a foreclosure sale under a chattel mortgage, the court said,—

"Whether this sale was planned and executed to defraud plaintiffs it is unnecessary to decide.  It was certainly well calculated to take an unjust advantage of them.  In the seizure of the property under the mortgages defendant owed a duty to plaintiffs.  That duty required him to use all fair and reasonable means in obtaining the best price for the property on sale.  The referee and the court found that the sale was not made in good faith nor the amount received upon the sale adequate, and that defendant took a wrongful

and unfair advantage of plaintiffs. We think the finding on this point is fully sustained by the evidence. The sale, therefore, being unfair was void, and the defendant was bound to account for the value of the property. . . . The sale being void there was no valid foreclosure, and the acts of defendant amounted to a conversion of the property to his own use, and rendered him liable for its value at the time he converted it."

The principles and conclusions then stated are equally applicable herein to the defendant's conduct and the manner in which it disposed of the mortgaged property, and particularly the surplus of the sale, even though the Stone Company is estopped by the former finding and judgment to establish herein that the value of the property was in excess of $150. However, notwithstanding that estoppel, the defendant is not thereby released from its duty to account to the Stone Company for the $300 which were actually realized on the sale. Out of the amount then realized, regardless of the real value, the defendant was entitled to retain or deduct only the indebtedness of $144.12, owing to it and secured by the mortgage, and its reasonable costs and charges in making the sale. *Flanders v. Thomas,* 12 Wis. *410, *412. It was not entitled to deduct for expenses needlessly incurred, 11 C. J. p. 737, § 575; Jones, Chattel Mortgages (5th ed.), pp. 1013, 1014, § 815a; or for services or commissions in selling property in an unusual manner not provided for in the mortgage, *Spencer Co. v. Papach,* 103 Iowa, 513, 70 N. W. 748; *Buckingham v. Dake* (C. C. A.), 112 Fed. 258, 262. The items totaling at $18.40, viz., $7.90 for the replevin costs, $6 for constable fees, and $4.50 for other costs on the sale, may be considered reasonable and deductible costs and charges, but the defendant was not entitled to any allowance for the alleged payment of $137.48 to O'Rourke. That sum, amounting to over forty-five per cent of the selling price, would be grossly excessive as a commission. But

in addition, it appears that because he was personally liable for the indebtedness secured by the mortgage his efforts or expenditures to effect a sale were for his personal benefit in order to discharge his liability. As they were not authorized or consented to by the Stone Company, and he was not its representative, it could not be subjected to any such excessive charge for procuring a purchaser. Consequently, on January 16, 1933, the defendant became liable to the Stone Company for the surplus of $137.40, which remained after deducting the items of $144.12 and $18.40 from the sum of $300 for which the mortgaged property was sold.

The defendant also contends that even if the Stone Company had a cause of action for any surplus on that sale, it did not pass to the plaintiff as its trustee in bankruptcy, because the liability for violating sec. 241.15 (3), Stats., is solely "to the person personally liable for the indebtedness," and not to any assignee, or trustee in bankruptcy, etc.; and likewise the right to redeem from a foreclosure sale under a chattel mortgage is merely a privilege which is personal to the persons mentioned in sec. 241.13, Stats. Neither of those statutes are applicable. The plaintiff is not seeking to recover damages under sec. 241.15 (3), Stats., or to redeem the mortgaged property under sec. 241.13, Stats. On the contrary, he is seeking to recover damages on a cause of action which became vested in the Stone Company on January 16, 1933, which was prior to the adjudication in bankruptcy. Upon the plaintiff's appointment as such trustee in bankruptcy, the Stone Company's right and title to that cause of action became vested in the trustee by operation of law, and he was empowered to maintain this action to recover thereon. USCA, title 11, § 110 (a) ; *Miley v. Heaney,* 168 Wis. 58, 89, 169 N. W. 64; *Sparks v. Kuss,* 195 Wis. 378, 391, 216 N. W. 929, 218 N. W. 208; *Hazelwood v. Third and Wells Realty Co.* 205 Wis. 85, 236 N. W. 591.

It follows that the judgment must be modified by limiting the damages which the plaintiff is entitled to recover to $137.48, with interest thereon from January 16, 1933; and that as thus modified the judgment must be affirmed.

*By the Court.*—Judgment modified as stated in the opinion, and affirmed as modified.

A motion for a rehearing was denied, with $25 costs, on May 25, 1937.