ESTATE OF JAVORNIK: STATE, Appellant, v. VODNIK and another, Respondents.*

*June 8—June 30, 1967.*

\* Motion for rehearing denied, without costs, on September 11, 1967.

742

For the appellant the cause was argued by *Roy G. Mita,* assistant attorney general, with whom on the brief was *Bronson C. La 'Follette,* attorney general.

For the respondent Helen Gertrude Vodnik there was a brief and oral argument by *Richard J. Steinberg* of Milwaukee.

HALLOWS, J.   The state contends the trial court abused its discretion in reopening the case for additional testimony because the grounds for such a request did not comply with the requirements for granting a new trial. The state views the rehearing as a new trial but it is clear from the record that the second hearing was a continuation of the first hearing because only additional proof was adduced and there was no resubmission of evidence. A new trial may be granted under sec. 270.49 (1), Stats., in the interests of justice for several reasons, one of them being when material evidence which is likely to change the result is discovered after trial. *Birnamwood Oil Co. v. Arrowhead Asso.* (1961), 14 Wis. (2d) 657, 665, 112 N. W. (2d) 185; *Foreman v. Milwaukee E. R. & L. Co.* (1934), 214 Wis. 259, 262, 252 N. W. 588. While the granting of the new trial is in the discretion of the trial court, the rules for the exercise of such dis-

cretion to avoid an abuse thereof have been clearly enunciated in prior decisions.

The conditions which newly discovered evidence must meet to be a basis for a new trial are: The evidence must come to the moving party's knowledge after the trial; he must not have been negligent in seeking to discover the evidence before the first trial; the evidence must be material and not merely cumulative; and it must be reasonably probable the evidence will produce a different result on a new trial. *Dunlavy v. Dairyland Mut. Ins. Co.* (1963), 21 Wis. (2d) 105, 118, 124 N. W. (2d) 73; *Estate of Kemman* (1960), 11 Wis. (2d) 392, 397, 105 N. W. (2d) 769; *Hoffman v. Buggs* (1959), 6 Wis. (2d) 488, 491, 95 N. W. (2d) 237; *Estate of Eannelli* (1955), 269 Wis. 192, 214, 68 N. W. (2d) 791; *Estate of Teasdale* (1953), 264 Wis. 1, 4, 58 N. W. (2d) 404. These guidelines for newly discovered evidence as a basis for a new trial put a premium on conscientious preparation and rightly discourage haphazard preparation for trial.

The affidavit submitted by Helen Vodnik does not meet these standards. The most the affidavit states is that the evidence was not presented at the first hearing. The evidence was of such a nature that we must presume its existence was known or with due diligence should have been discovered in the course of normal preparation for the first hearing.

While the power to reopen a case for additional testimony also lies in the discretion of the court, the limitations upon the exercise of this power are not the same as those limiting the power to grant a new trial. No certain or mechanical rules have been formulated by this court for the exercise of the power. Certain it is a litigant has no strict right to reopen a case for the purpose of introducing additional evidence, but the discretion of the trial court seems to rest upon general principles of equity and justice including whether the opposing party is prejudiced in the trial or proof of his contentions.

*Robinson v. Oconto* (1913), 154 Wis. 64, 142 N. W. 125;
*Barlass v. Kargus* (1901), 111 Wis. 611, 613, 87 N. W.
800; *Riha v. Pelnar* (1893), 86 Wis. 408, 57 N. W. 51;
*State ex rel. Wildman v. Kidd* (1885), 63 Wis. 337, 23
N. W. 703. See *Radichel v. Kendall* (1904), 121 Wis.
560, 99 N. W. 348; *Wilke v. Milwaukee Electric Railway
& Light Co.* (1932), 209 Wis. 618, 626, 245 N. W. 660.
Reopening for additional testimony a case tried to the
court poses less problems than granting a new trial either
before a court or a jury. In the present case the state
did not object to the reopening for additional testimony
and other than the result of the hearing, which is not
considered an element of prejudice, has shown no preju-
dice from such action. Under these facts, we will not
hold the court abused its discretion in reopening the
hearing.

The testimony showed that Helen Vodnik lived in the
decedent's home with him since she was four years of
age and was raised by him and his wife. For twelve
years prior to Mr. Javornik's death she lived in his home
with her husband and sons and paid no rent. Mr.
Javornik and the Vodniks lived together as one family.
She did the housekeeping, bought food, prepared meals
and did all the cooking. Mrs. Vodnik took care of Mrs.
Javornik during her illness up to the time of her death
in May, 1942. Mr. Javornik quit work at age sixty-seven
and lived to be eighty years old. About six years before
his death Mr. Javornik became ill and required personal
care which Mrs. Vodnik gave in the form of helping
him dress, getting him in and out of bed, giving him medi-
cation, serving meals to him in bed and performing such
services as an elderly sick person would need. While
Mr. Javornik paid for the real-estate taxes and some
minor home improvements, Mrs. Vodnik and her husband
advanced and paid other expenses, such as doctor bills
and insurance for Mr. Javornik and real-estate taxes
after his death.

It was testified by one neighbor that Mr. Javornik had stated, "I take care of her. Everything is hers. The house is her home." Other neighbors' testimony was to the same effect. The trial court found that while Mr. Javornik may have made the statements there existed no oral promise based on a consideration so as to give rise to a contract. After the second hearing, the court found the services for six years before Mr. Javornik's death to be worth $7,000 on a *quantum meruit* basis. However, there is no evidence in the record of the value of any of the services rendered by Mrs. Vodnik.

A trial court, even a probate court which has some knowledge of the value of personal services rendered to elderly persons, cannot substitute its experience for expert testimony of value. Without testimony of the value of the services rendered, there is a lack of proof essential to the establishment of the claim. *Will of Gudde* (1951), 260 Wis. 79, 49 N. W. (2d) 906. In such a situation we have said, ". . . the county court had no choice but to disallow the claim." *Estate of Reynolds* (1964), 24 Wis. (2d) 370, 374, 129 N. W. (2d) 251. See *Moritz v. Allied American Mut. Fire Ins. Co.* (1965), 27 Wis. (2d) 13, 28, 133 N. W. (2d) 235; *Morris v. Resnick* (1955), 268 Wis. 410, 421, 67 N. W. (2d) 848; *Gauger v. Hintz* (1952), 262 Wis. 333, 349, 55 N. W. (2d) 426. Consequently, this finding of the value of the services cannot be sustained.

Before considering the state's concession that Helen Vodnik's net services were worth $3,000, the question remains whether the six-year statute of limitations, sec. 893.19 (3), Stats., or the two-year statute applies for the services rendered. The trial court took the view that household services were of a different character than personal services and would come under the six-year statute and since the claim involved both types of service which could not be separated, only the six-year statute applied.

There is support for the trial court's position in *Estate of Fredericksen* (1956), 273 Wis. 479, 78 N. W. (2d) 878, wherein a claim was filed against an estate for board, lodging, care and laundry furnished the deceased and it was held that the claim was outside the two-year limitation of sec. 330.21 (5), now numbered 893.21 (5), Stats. This section provides "Any action to recover unpaid salary, wages or other compensation for personal services, except fees for professional services" must be commenced within two years after the cause of action has accrued. In *Estate of Dobrecevich* (1962), 17 Wis. (2d) 1, 115 N. W. 597, and in *Cordova v. Gutierrez* (1964), 23 Wis. (2d) 598, 128 N. W. (2d) 62, we characterized the claim in *Fredericksen* as being one where elements of "personal service" and other services were intertwined.

We think "personal services" as used in sec. 893.21 (5), Stats., means human labor such as is commonly rendered in return for a salary or a wage in the case of an employee and for "other compensation" in the case of an independent contractor or one not in an employee relationship. Such human labor must be in the nature of a service as distinguished from the end product or the fruit of the service. While some personal services may result in a salable article or an end product, the distinguishing feature of personal services for the purpose of this section is whether the human labor itself is sought and is the object of the compensation or whether the end product of the service is purchased.

A claim which includes personal services with other items is not necessarily outside the two-year statute. If the personal services can be reasonably separated and a value be assigned, then the recovery for the personal services within the meaning of the statute is restricted to two years; the other labor and items may come under the six-year statute. However, if a claim or contract covers both personal services and other items and they

cannot be separated and the total compensation allocated, the entire contract or claim under the rule of *Fredericksen* is outside the two-year statute. A claimant, however, cannot avoid the limitation of the two-year statute by merely intertwining various personal services and other items in one claim if they are not so inseparable in fact.

In this case no attempt was made to allocate the services for the purpose of the six-year and the two-year statutes. Certainly, helping Mr. Javornik out of bed, dressing him, and giving him medication are indisputably personal services, but no value was set on any of the services. The claimant already has had an additional hearing and has failed to prove her claim. Normally this case would be reversed and the claim denied for lack of proof on the essential element of value. However, since the state concedes on appeal the services were worth $3,000 over and above any rental benefits, such amount should not be lost to the claimant. We think that part of the claim allowing $7,000 for services may be reduced to $3,000 on the basis of the concession and the order amended accordingly and, as amended, affirmed. In addition the claimant is entitled to the $1,574.45 which is not contested on appeal.

*By the Court.*—The order is modified to reduce the claim for services from $7,000 to $3,000 and, as modified, affirmed; no costs to be taxed.